IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **EDDIE CHANDLER,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ]   CV-05-BE-1982-E |
| | ] |
| **LARRY AMERSON, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

### INTRODUCTION

This case is before the court on Defendant Calhoun County Sheriff Larry Amerson's Motion to Dismiss (doc. 10). For the reasons set forth below, the court finds that Amerson's Motion is due to be **GRANTED**.

### BACKGROUND

**I. Procedural History.**

Plaintiff Eddie Chandler sued Defendants Sheriff Larry Amerson, Lieutenant Richard Smith,[1] and John Does #1 through #6 under 42 U.S.C. § 1983. Plaintiff asserts violations of his rights as secured by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. He seeks monetary, declaratory, and injunctive relief.

On December 19, 2005, Amerson filed a Motion to Dismiss (doc. 10). In his Motion, Amerson argues that (1) he is immune from all claims asserted against him in his official and individual capacity; (2) references to fictitious Defendants are due to be stricken; and (3) claims for punitive damages are due to be stricken. Plaintiff filed a Response to Amerson's Motion, to

---

[1] Agent Steven Perry was dismissed from this lawsuit by the court's April 18, 2006 Order. *See* doc. 30.

which Amerson submitted a Reply. *See* docs. 14, 15. On April 18, 2006, the court stayed discovery as to Amerson pending a ruling on this Motion to Dismiss. *See* doc. 31.

## II. Allegations.

As required on a Motion to Dismiss, the following allegations from Plaintiff's Complaint are viewed as true and resolved in the light most favorable to Plaintiff.

At the time relevant to this lawsuit, Sheriff Larry Amerson was the sheriff of Calhoun County. According to Plaintiff's Complaint, Amerson establishes, oversees, and controls the practices, procedures, and policies of the sheriff's office. He is responsible for hiring, retaining, maintaining, training, disciplining, and supervising the deputies and employees who make up those responsible for the Calhoun County Sheriff's Department and the Calhoun County Drug Task Force.

On September 25, 2003 agents from the Calhoun County Drug Task Force, the Drug Enforcement Agency, the Alabama Bureau of Investigation, and the U.S. Forest Service executed a search warrant at Plaintiff's residence. At approximately 8:20 am, they knocked the back door of the house off the hinges and entered the residence. Upon encountering Plaintiff's wife, an unidentified agent placed a gun to her forehead, threw her to the floor, and handcuffed her. Upon encountering Plaintiff, Lieutenant Smith and unidentified agents ordered Plaintiff to get down, and then pushed him onto his hands and knees. An unidentified agent drove Plaintiff to the floor by kicking his foot into Plaintiff's back, and then another agent sat on Plaintiff's head and shoulders while Plaintiff's hands were cuffed. At no time did Defendants identify themselves.

After he was handcuffed, Plaintiff was pulled up by his arms and taken outside the house. He was forced to wait in the sun for approximately four hours without water or medical attention. He was ultimately released without being taken into custody. On September 22, 2005, he filed

...

this lawsuit.

## STANDARD OF REVIEW

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is...exceedingly low." *Ancata v. Prison Health Serv's., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (internal quotations omitted). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe all factual allegations as true and resolve them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). The court may grant the motion only if the court clearly and beyond doubt cannot award the plaintiff relief under any set of facts that could be proved consistent with the allegations of the complaint. *See Id*. at 735. "In seeking dismissal for failure to state a viable claim, a defendant thus bears the very high burden of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Id*. at 735-36.

However, in cases involving potential defenses of immunity, the court should rule on the validity of such defenses as early in the litigation as possible. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Further, with respect to whether qualified immunity applies to § 1983 claims, a heightened pleading standard applies. *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). Pursuant to this standard, more than conclusory notice pleading is required; rather, the complaint must allege the relevant facts with some specificity. *Id*.

## DISCUSSION

The court begins by noting that Plaintiff abandoned the Fifth and Eighth Amendment claims in his Response to Amerson's Motion to Dismiss.[2] Accordingly, only Plaintiff's Fourth

---

[2] *See* Resp, ¶¶ 3-4 (stating that "Plaintiff abandons Fifth Amendment claims" and that "Plaintiff abandons Eighth Amendment claims.")

this lawsuit.

## STANDARD OF REVIEW

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is...exceedingly low." *Ancata v. Prison Health Serv's., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (internal quotations omitted). In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the court must construe all factual allegations as true and resolve them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). The court may grant the motion only if the court clearly and beyond doubt cannot award the plaintiff relief under any set of facts that could be proved consistent with the allegations of the complaint. *See Id*. at 735. "In seeking dismissal for failure to state a viable claim, a defendant thus bears the very high burden of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Id*. at 735-36.

However, in cases involving potential defenses of immunity, the court should rule on the validity of such defenses as early in the litigation as possible. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Further, with respect to whether qualified immunity applies to § 1983 claims, a heightened pleading standard applies. *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). Pursuant to this standard, more than conclusory notice pleading is required; rather, the complaint must allege the relevant facts with some specificity. *Id*.

## DISCUSSION

The court begins by noting that Plaintiff abandoned the Fifth and Eighth Amendment claims in his Response to Amerson's Motion to Dismiss.[2] Accordingly, only Plaintiff's Fourth

---

[2] *See* Resp, ¶¶ 3-4 (stating that "Plaintiff abandons Fifth Amendment claims" and that "Plaintiff abandons Eighth Amendment claims.")

and Fourteenth Amendment claims brought under § 1983 are at issue for purposes of this Opinion.[3]  Additionally, the court notes that the Federal Rules of Civil Procedure do not authorize fictitious party practice. *See Weeks v. Benton*, 649 F. Supp. 1297, 1298 (S.D. Ala. 1986) ("[f]ictitious party practice is not authorized by the Federal Rules of Civil Procedure or any other federal statute.") Consequently, John Does # 1 through 6 shall be stricken as parties to this lawsuit.[4]

With respect to the remaining § 1983 claims brought against Amerson, Plaintiff apparently concedes that Amerson is immune from suit in his official capacity.[5]  However, Plaintiff argues that Amerson is not entitled to immunity in his individual capacity.  Amerson contends that he has qualified immunity from individual liability, and that the Complaint does not meet the heightened pleading requirements applicable to § 1983 claims.

Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S.

---

[3] Though not clear, the Complaint may allege constitutional claims and common law tort claims.  However, Amerson is explicitly referred to only in Count 5, which refers to his supervisory responsibilities as Sheriff of Calhoun County.  Count 5 specifically addresses alleged constitutional violations in four separate paragraphs.  *See* Compl., ¶¶ 39, 40, 42, & 43.  Moreover, Plaintiff did not argue that any common law tort claims applied to Amerson in his Response to this Motion to Dismiss.  For these reasons, and because the Complaint states that the action is brought to secure constitutional rights pursuant to § 1983, the court finds that the only claims asserted against Amerson are alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendment to the U.S. Constitution.  *See* Compl., ¶ 1.

[4] Plaintiff contends that the John Does are not fictitious, but are merely not currently identified.  *See* Resp. Br., p. 11.  However, Plaintiff does not provide any legal authority to support this contention.

[5] *See* Resp., p. 1 ("Sheriff Amerson has not waived his official capacity immunity and therefore *the claims against him in his official capacity can be dismissed*) (emphasis added); *See* Resp. Br., p. 4 ("Sheriff Amerson has asserted his immunity in his official capacity.")

730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotations omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id.*; citing *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

### I. Discretionary Authority.

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Plaintiff's Complaint makes no allegation that Amerson was physically present at the scene when the warrant was executed. Instead, as Amerson points out, the Complaint essentially indicates that Amerson failed to train and supervise the agents that executed the warrant.[6] Based on these allegations, the court concludes that Amerson's management and supervisory activities in this case constitute discretionary actions to which the defense of qualified immunity applies.

### II. The Test for Qualified Immunity.

Once a defendant shows that he was acting within his discretionary authority, the burden

---

[6]*See* Compl., ¶¶ 38-43. Amerson argues that these paragraphs do not articulate valid supervisory claims against him.

shifts to the plaintiff to show that qualified immunity is not appropriate. *Id*. The Supreme Court articulated a two part test to determine whether qualified immunity is appropriate. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court first asks "this threshold question: [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right....[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003); citing *Saucier*, 533 U.S. at 201.

In *Gonzalez v. Reno*, the plaintiffs sued former Attorney General Janet Reno, former commissioner of the Immigration and Naturalization Service ("INS") Doris Meissner, former Deputy Attorney General Eric Holder, and others for their alleged involvement in the seizure of Elian Gonzalez from his relatives' home in Miami. *Gonzalez,* 325 F.3d at 1231. In that seizure, federal agents executed a search and arrest warrant obtained by the INS. *Id*. at 1232. According to the complaint, armed agents allegedly (1) sprayed gas into the residence; (2) broke down the front door with a battering ram; (3) entered the residence without first announcing their presence; (4) sprayed more gas; (5) pointed guns at the occupants of the residence, threatening to shoot; (6) shouted obscenities; and (7) broke doors, furniture, and religious artifacts. *Id*. The complaint contained no allegation that Reno, Meissner, or Holder, the "supervisory defendants," were present at the scene when the warrant was executed. *Id*. at 1233.

The supervisory defendants asserted the defense of qualified immunity in a motion to dismiss, which the district court denied. *Id*. at 1232. The Eleventh Circuit reversed, holding that the plaintiffs failed to allege that the supervisory defendants' conduct constituted a constitutional violation; thus, the supervisory defendants were entitled to qualified immunity. *Id*. at 1236. The court found that

6

> Supervisory liability...occurs either when the supervisor *personally participates* in the alleged constitutional violation or when there is a *causal connection* between actions of the supervising official and the alleged constitutional violation.  A causal connection can be established when a history of widespread abuse puts the responsible superior on notice of the need to correct the alleged deprivation, and he fails to do so, or when the supervisor's improper custom or policy...resulted in deliberate indifference to constitutional rights.  A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.
>
> In examining the factual allegations in the complaint, we must keep in mind the *heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity*.  The complaint must allege the relevant facts with some specificity.  More than mere conclusory notice pleading is required....[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.  Moreover, in reviewing a motion to dismiss, we need only accept well-pleaded facts and reasonable inferences drawn from those facts.  Unsupported questions of law or of mixed fact and law have long been recognized not to prevent a *Rule 12(b)(6)* dismissal.  We must also keep in mind the fact that we generally accord...official conduct a presumption of legitimacy.

*Id*. at 1235 (emphasis added) (internal quotations and citations omitted).  The court assumed, without deciding, that the armed agents' conduct deprived the plaintiffs of their Fourth Amendment right to be free from unreasonable searches and seizures.  *Id*. at 1234.  The court then analyzed the complaint to determine whether the plaintiffs alleged facts sufficient to establish supervisory liability.  Specifically, the complaint alleged that

> [The supervisory defendants] personally directed and caused a paramilitary raid upon their residence, and had actual knowledge of, and agreed to, and approved of, and acquiesced in, the raid in violation of the Fourth Amendment rights of Plaintiffs herein...
>
> The agents on the scene acted under the personal direction of Defendants, JANET RENO, DORIS MEISSNER and ERIC HOLDER, and with the knowledge agreement, approval, and acquiescence of Defendants, JANET RENO, DORIS MEISSNER and ERIC HOLDER...
>
> [The supervisory defendants] personally participated in the constitutional violations, and there was clearly a causal connection between their actions and the

7

constitutional deprivation.

*Id*. at 1235 (citing plaintiffs' complaint).

The Eleventh Circuit found that these allegations did not establish supervisory liability because the averments were statements and legal conclusions unsupported by factual allegations. *Id*. The court held that

> [g]iven the presumption of legitimacy accorded to official conduct, it would be unreasonable to draw from the alleged facts the inference that the supervisory defendants directed the agents on the scene to engage in the unconstitutional activity with which they are charged. Instead, the reasonable inference which we must draw from the factual allegations is that the supervisory defendants ordered the execution of valid search and arrest warrants with the expectation that the agents on the scene would execute them in a lawful manner.

*Id*. at 1235-36.

Similarly, even assuming all allegations in the Complaint are true, Plaintiff in this case does not allege facts sufficient to show that Amerson's conduct violated Plaintiff's constitutional rights. Construing as true the allegations regarding the agents' actions[7] who executed the warrant, the averments with respect to Amerson's supervisory conduct do not meet the heightened pleading standard applicable to § 1983 claims. The relevant portions of the Complaint state that

> At all times pertinent, herein, Sheriff of Calhoun County, Larry Amerson is responsible for his actions in performing and carrying out his job as Sheriff of Calhoun County and responsible for the CCDTF and other unknown law enforcement Agent Defendants working under the purview and direction of Sheriff Amerson and Lieutenant Smith.
>
> The Defendant Sheriff Amerson has failed to implement and enforce policies, customs and procedures adequately to ensure that the constitutional rights of citizens are protected in such incidents.
>
> The failure of Defendant Sheriff Amerson of Calhoun County, Alabama to

---

[7]*See* Compl., ¶¶ 13-24.

adequately train, supervise, discipline and employ and direct its law enforcement officers and agents is a result of said county's acquiescence to unconstitutional practices as further evidence by the county's history, custom and malicious use of unreasonable and excessive force by its law enforcement officers.[8]

At all times pertinent herin Defendant Agents of CCDTF and other unknown Defendants acted within the scope of their Direction of Calhoun County Sheriff's Office and were carrying out the business of the Sheriff, Larry Amerson, and the County of Calhoun.

At all times mentioned herein, the Defendant Agents of CCDTF and other unknown Defendants were under the purview and supervision of Sheriff Amerson, Sheriff of Calhoun County, Alabama, and Lieutenant Smith, and the use of excessive and unreasonable force was a condition which the Sheriff's Office and Sheriff Amerson knew could likely occur as a result of improper screening, hiring, disciplining and supervising of the deputies therein and of an acquiescence to unconstitutional practices.[9]

As a direct and proximate cause of the events and the conduct of Office of Sheriff and Amerson as Sheriff of Calhoun County in their acquiescence to unconstitutional practices and their failure to appropriately supervise and discipline Defendant Agents of the CCDTF, DEA, ABI and USFS ensuring constitutional rights are not violated, Plaintiff Chandler has suffered serious injuries necessitating medical and psychological treatment.[10]

The court finds that these conclusory allegations are insufficient under § 1983's heightened pleading requirements because (1) they do not show that Amerson took part in, or was present at, the execution of the warrant; (2) they do not allege specific facts to show that Amerson was aware of a history of abuse that put him on notice of the need to correct the problem; (3) they do not identify specific customs or policies that result in a deliberate indifference to constitutional rights; and (4) they do not offer specifics regarding improper screening, hiring, disciplining, and supervising.  Consequently, the allegations do not sufficiently

---

[8]The Complaint lacks factual support for the allegations regarding the history or custom of unreasonable and excessive force.

[9]The Complaint lacks any further factual allegations to support this conclusion.

[10]Compl., ¶¶ 38-43

establish that Amerson personally participated in a constitutional violation or that a causal connection exists between his supervisory actions and the alleged violation. Similar to the plaintiffs in *Gonzalez*, Plaintiff in this case alleged that agents on the scene violated his constitutional rights, but he failed to allege *facts* which, if true, would establish that Amerson caused that violation. *See Gonzalez*, 325 F.3d at 1236. Accordingly, Amerson is entitled to qualified immunity.

## CONCLUSION

The court finds that Amerson's Motion to Dismiss (doc. 10) is due to be **GRANTED** on the basis of immunity. The court **ORDERS** that Amerson be **DISMISSED** from this case. The court further **ORDERS** that fictitious parties John Does # 1 through # 6 be **STRICKEN** from the Complaint. Because no reason exists for doing so, the court declines to address the issue of punitive damages.

DONE and ORDERED this 21st day of April, 2006.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE